**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x  **FOR PUBLICATION**

In re:                                             :
                                     :
    ARCADE PUBLISHING, INC.,   :    Chapter 11
                                     :    Case No. 09-13636 (MG)
                     Debtor.       :

------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTOR'S
OBJECTION TO CLAIM NO. 62 FILED BY STEVEN K. HODEL**

*A P P E A R A N C E S:*

ROSEN & ASSOCIATES, P.C.
*Attorneys for the Debtor and Debtor in Possession*
747 Third Avenue
New York, New York 10017-2803
By:    Nancy L. Kourland, Esq.

THE LAW OFFICE OF ANTHONY N. ELIA, P.C.
*Attorneys for Creditor Steven K. Hodel*
325 Broadway, Suite 201
New York, New York 10007
By:    Anthony N. Elia, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

       Arcade Publishing, Inc. ("Arcade" or the "Debtor") filed the *Debtor's Objection to Claim No. 62 Filed by Steven K. Hodel* (the "Objection"), challenging the portion of the unsecured claim filed by Steven K. Hodel ("Hodel") seeking prepetition prejudgment statutory interest under section 5001(a) of the New York Civil Practice Law and Rules ("NY CPLR") (the "Claim").[1]  (ECF Doc. # 179.)  Hodel timely filed proof of claim number 62 in the amount of $333,335.52—comprised of the principal amount of

---

[1] Hodel responded to the Objection on July 20, 2011 ("Response"). (ECF Doc. # 222.) On July 22, 2011, Arcade filed a reply to Hodel's response ("Reply"). (ECF Doc. # 224.)

1

$224,571.07, plus statutory interest. Before the bankruptcy petition was filed, Hodel had filed a breach of contract action against Arcade in New York County Supreme Court (the "State Court Action"),[2] but the bankruptcy petition was filed before the State Court Action concluded. Arcade argues that the Claim should be allowed only in the principal amount of $224,571.07; it objects to the allowance of prepetition prejudgment statutory interest in the amount of $108,716.19.[3] The Court heard argument on the Objection on July 27, 2011 (the "Hearing") and took the matter under submission.

For the reasons discussed below, Arcade's Objection is sustained: the Claim is allowed in the principal amount of $224,571.07, without interest. Based on the plain language of NY CPLR § 5001(a),[4] in the absence of a "sum awarded" in a New York state court (or bankruptcy court) action—not present here—Hodel is not entitled to statutory interest as a portion of the Claim.

## I.    BACKGROUND

Arcade, a New York corporation, was a full-service publishing company that had been in business for over 20 years. Arcade specialized in publishing international and domestic literary works and enjoyed a prominent reputation within the industry. With the death of Arcade's president, the company struggled to reorganize and find investors. The woes of the publishing industry as well as the economic climate seemed to be the final

---

[2]  The State Court Action, filed in the New York County Supreme Court, is titled *Hodel v. Arcade Publishing*, Index No. 603387/2008.

[3]  At the Hearing, the Court directed the parties' counsel to stipulate to the method of calculation and amount of prepetition prejudgment interest sought by Hodel. Hodel's counsel filed a letter on August 1, 2011 revising the amount of the Claim to $333,287.26, and stipulating with Arcade's counsel that the disputed amount of prepetition prejudgment interest calculation is $108,716.19 (reduced from $108,764.45). (ECF Doc. # 241.)

[4]  N.Y. Civ. Prac. L. & R. § 5001(a) (McKinney 1992).

2

straws, leading Arcade to seek relief under chapter 11 on June 5, 2009. On July 22, 2010, the Court entered an order approving the sale of the Debtor's assets to Skyhorse Publishing, Inc. (ECF Doc. # 97.) Arcade's *Joint Plan of Liquidation of the Official Committee of Unsecured Creditors and Debtor* was confirmed on April 15, 2011. (ECF Doc. #s 117, 156.) Arcade's disclosure statement estimated recoveries by unsecured creditors in the range of 7–8%. (ECF Doc. # 132 at 9.)

Hodel's Claim arises from unpaid royalties from his book, *The Black Dahlia Avenger – A Genius for Murder*, under a publishing agreement between Arcade and Hodel executed in 2002 (the "Contract"). (Claim, Ex. B.) *The Black Dahlia Avenger – A Genius for Murder*, reached as high as number 14 on *The New York Times* "Best Sellers - Nonfiction" list in May 2003, became a best seller in France and was published in at least three other foreign countries.[5] Hodel's proof of claim in the revised amount of

---

[5] The Amazon.com book review describes the book as follows:

> For 56 years, the Black Dahlia murder case remained one of the most notorious and high-profile unsolved crimes of the 20th century. Now, Steve Hodel, a 24-year veteran of the Los Angeles Police Department, believes he has finally solved the case. On January 15, 1947, 22-year-old Elizabeth Short—"The Black Dahlia"—was found dead in a vacant lot in Los Angeles, her body horribly mutilated, bisected at the waist, and posed in a bizarre manner. The horrific crime shocked the country and commanded headlines for months as the killer taunted the police with notes and phone calls. Despite the massive manhunt, the murderer was never found.
>
> Hodel began working on the case after he retired from the LAPD when he chanced upon an intriguing piece of evidence that led him on [sic] trail that he had no choice but to follow since it pertained directly to him. As he dug deeper, he came to believe that the killer was also responsible for over a dozen other unsolved murders in the Los Angeles area around the same time. He also found copious evidence of corruption at the LAPD, leading him to accuse the department top brass of covering up the Black Dahlia murder in order to conceal a deeper conspiracy involving crooked politicians and gangsters.
>
> Despite a lack of physical evidence (which had been destroyed), Hodel is able to connect numerous dots and make a plausible case, complete with lurid tales of wild orgies that were attended by celebrities such as

3

$333,287.26 for "book royalties due author" is broken down into three components: (1) $224,571.07 in royalties due and owing as principal; (2) $101,056.98 in interest on the principal amount; and (3) $7,659.21 in interest on royalties that Arcade paid late in breach of the contract.[6] Arcade does not object to allowance of the Claim for $224,571.07. (Objection ¶ 8.) However, Arcade objects to the allowance of prepetition interest in the amount of $108,716.19 (the aggregate of $101,056.98 and $7,659.21).[7]

Arcade scheduled the amount due Hodel for "author royalties" as $111,453.00. (ECF Doc. # 2, Sched. F at 20.) That amount was not listed as contingent, unliquidated, disputed or subject to setoff. (*Id.*) The Debtor's Statement of Financial Affairs listed the State Court Action as "pending," as an "action for payment of author royalties." (ECF Doc. # 3.) No judgment or verdict was ever entered in the State Court Action. The only thing pending in this Court is a contested matter regarding allowance of Hodel's claim

---

> the artist Man Ray, the director John Huston, and a host of other Hollywood elites. He also discloses his killer's obsession with the Marquis de Sade and Jack the Ripper and how he modeled his own crimes on their behavior. In particular, there is a disturbing connection between the work of Man Ray and the horrific circumstances of Short's murder. It is doubtful that this will be the final word on the Black Dahlia murder—too much myth surrounds it and much of his evidence is circumstantial—but Hodel's labyrinthine tale adds much to this intriguing case.

Black Dahlia Avenger: A Genius For Murder – Amazon.com, http://www.amazon.com/Black-Dahlia-Avenger-Genius-Murder/dp/0060589957/ref=sr_1_1?s=books&ie=UTF8&qid=1311875553&sr=1-1 (last visited August 8, 2011). The story of the Black Dahlia murder investigation was also made into a poorly-reviewed movie in 2006. *The Black Dahlia*, IMDb, The Internet Movie Database, http://www.imdb.com/title/tt0387877/ (last visited August 8, 2011).

[6]     Hodel asserts entitlement to prepetition prejudgment interest based on NY CPLR § 5001(a). Nothing in the Contract entitles Hodel to interest for late or unpaid royalties. (Objection § 11.)

[7]     Hodel appears to read the Objection as only objecting to the prepetition interest in the amount of $101,056.98, and not the $7,659.21 component. (Response ¶ 6.) The Objection makes clear, however, that the Arcade objects to the aggregate amount of interest sought—$108,716.19. Further, Hodel avers that his claim to the $7,659.21 is based on the asserted breach of the Contract. (Claim ¶ 1.) ("Hodel also seeks interest on certain royalty sums which Arcade paid late – *in breach of the contract* – in the amount of $7,659.21.") (emphasis added). A verdict or judgment awarding damages to Hodel for breach of contract would give rise to an award of interest. NY CPLR § 5001(a). Accordingly, the Court will consider the Objection applicable to the full amount of interest sought by Hodel.

under section 502; no plenary action for breach of contract is pending in this Court. *See* 11 U.S.C. § 502(b) ("[I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . .").

## II.     DISCUSSION

Section 101(5) of the Bankruptcy Code defines a "claim" broadly to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (Congress "intended by this language to adopt the broadest available definition of 'claim.'") (citations omitted). "[T]he term 'claim' is sufficiently broad to encompass any possible right to payment." *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 302 (2d Cir. 1997). "[A] valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." *LTV Steel Co., Inc. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995). Further, the Second Circuit has recognized that "[a] claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law." *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143, 147 (2d Cir. 2009) (citation and internal quotation marks omitted).

The Supreme Court has stated that "'[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligations, subject to any qualifying or contrary provisions of the Bankruptcy Code.'" *Travelers*

5

*Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000)).  This "principle requires bankruptcy courts to consult state law in determining the validity of most claims." *Id.* Thus, claims that are "enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Id.* at 452 (citing 11 U.S.C. § 502(b)).

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate.  11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). Claims for "unmatured interest" shall not be allowed:

> [t]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . (2) such claim is for unmatured interest.

11 U.S.C. § 502(b)(2).

The term "unmatured interest" is not defined by the Bankruptcy Code. *See In re United States Lines, Inc.*, 199 B.R. 476, 480 (Bankr. S.D.N.Y. 1996) (citing *In re Pengo Indus., Inc.*, 962 F.2d 543, 546 (5th Cir. 1992)).  Courts have allowed interest as part of a claim if the interest has been "earned" by the creditor as of the petition date.[8] *In re Chateaugay Corp.*, 109 B.R. 51, 57 (Bankr. S.D.N.Y. 1990) ("The legislative history of Code § 502(b)(2) suggests that a claim for interest . . . in bankruptcy may be maintained

---

[8]  Black's Law Dictionary defines "mature" as "to become due," and a "matured claim" as "a claim based on a debt that is due for payment." BLACK'S LAW DICTIONARY, 1068 and 282 (9th ed. 2009).

6

only to the extent such interest . . . has been 'earned' by the creditor."), *aff'd*, 130 B.R. 403 (S.D.N.Y. 1991), *aff'd in part, rev. in part on other grounds*, 961 F.2d 378 (2d Cir. 1992). One court recently noted that "[t]he Bankruptcy Code does not define 'unmatured interest,' but case law has determined that unmatured interest includes interest that is not yet due and payable at the time of a bankruptcy filing, or is not yet earned." *HSBC Bank USA v. Calpine Corp.*, No. 07 Civ 3088(GBD), 2010 WL 3835200, at *5 (S.D.N.Y. Sept. 15, 2010) (citation omitted). Importantly, the Second Circuit has also explained, "[p]repetition interest is generally allowable [as a claim] to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts." *Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998) (citation omitted).

Turning to the facts of this case, for interest to be included in the Claim, Hodel must establish an entitlement to prepetition interest "to the extent . . . permitted under the applicable nonbankruptcy law." *Id.* at 423. NY CPLR § 5001, titled "Interest to verdict, report or decision" is the applicable New York law that governs whether Hodel is entitled to prepetition prejudgment interest from Arcade. NY CPLR § 5001(a) states:

> Interest shall be recovered upon a *sum awarded* because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

NY CPLR § 5001(a) (emphasis added).

NY CPLR § 5001(b) adds that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed . . . ." *Id.* § 5001(b). Where there has been

7

a "sum awarded because of a breach of performance of a contract," recovery of interest is a matter of right. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1261 (2d Cir. 1987) ("Krear was entitled to such interest as a matter of law. New York law provides that such interest 'shall' be recovered . . . and the failure of the court to award the interest would have constituted reversible error.") (citing *Julien J. Studley, Inc. v. Gulf Oil Corp.*, 425 F.2d 947 (2d Cir. 1969)).

The parties' dispute focuses on whether there was a "sum awarded" as contemplated by NY CPLR § 5001(a) sufficient to allow the prepetition prejudgment interest to be included in the Claim.[9] Hodel did not obtain a judgment in the State Court Action, but he nevertheless contends he is entitled to prejudgment interest on two separate bases. First, he argues that because the Bankruptcy Code's definition of "claim" includes a "right to payment, whether or not such right is reduced to judgment," 11 U.S.C. § 101(5)(A), Hodel's right to interest accrued when he filed the State Court Action and is thus part of his "claim" notwithstanding a lack of judgment. Hodel also argues that recovery of interest under NY CPLR § 5001(a) does not require a "sum awarded," because on a theory of equity the "Debtor caused his state court action to be stayed and then consented to the principal portion of his proof of claim in the amount of $224,571.07." (Response ¶ 13) ("Thus, Debtor has conceded that Mr. Hodel's claim is about twice as large as scheduled. Debtor's concession of the claim at this time should not permit it from arguing that Mr. Hodel was not 'awarded' a sum."). Hodel presses the argument that Arcade's concessions are tantamount to a "sum awarded" under NY CPLR § 5001(a). Hodel's arguments are unpersuasive.

---

[9] At the Hearing, Hodel conceded that his unsecured Claim may not include post-petition interest.

As an initial matter, the Court rejects Hodel's argument the Claim should include interest because the definition of "claim" in the Bankruptcy Code includes a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A). State law determines whether prepetition interest is allowable as a claim. *In re Milham*, 141 F.3d at 423. As explained more fully below, NY CPLR § 5001(a) requires that a verdict, judgment or decision be rendered in favor of the plaintiff in a breach of contract action before plaintiff is entitled to statutory interest under NY CPLR § 5001(a). Without a verdict, judgment or decision in the State Court Action, Hodel's right to prepetition prejudgment statutory interest did not form part of the "claim" against Arcade's estate.

As to Hodel's second argument, the plain language of NY CPLR § 5001(a) requires that there be a "sum awarded" to a plaintiff to recover interest for a breach of contract. What constitutes a "sum awarded" under NY CPLR § 5001(a)? Caselaw and treatises interpreting that section confirm that a verdict, judgment or decision is required to receive interest for a breach of contract claim under NY CPLR § 5001(a).

Commentary to NY CPLR § 5001 confirms that a verdict, judgment or decision is required to collect interest under subsection (a). McKinney's Consolidated Laws of New York Annotated describes NY CPLR § 5001(a) as governing the award of interest "on the cause of action from the time it accrues until the time of *verdict or decision*." N.Y. CIV. PRAC. L. & R. § 5001(a) (McKinney 1992) at Practice Commentaries, C5001:1 (emphasis added). "Under CPLR 5001, interest to verdict, report, or decision is intended to compensate the plaintiff for the defendant's use of money that would have been paid over to the plaintiff at the time the latter's right to redress accrued." Weinstein, Korn & Miller, NEW YORK CIVIL PRACTICE ¶ 5001.00 (2d ed. 2005) (*"Weinstein"*). In addition,

9

Weinstein affirms that the rationale for this section "was based on the theory that *a successful plaintiff* was entitled to compensation for the defendant's use of money that should have been paid to the plaintiff upon the accrual of the plaintiff's right to recovery." *Id.* (emphasis added). Finally, section 5001(a) has been characterized as governing "[i]nterest on the cause of action from its accrual until the verdict (or the decision, if the case is tried by the court)." David D. Siegel, NEW YORK PRACTICE § 411 (4th ed. 2005).

The cases Hodel relies upon do not support the award of interest for breach of contract absent a verdict or judgment. *See, e.g.*, *In re 114 Tenth Ave. Assoc., Inc.*, No. 05-60099 (ALG), 2011 WL 1211547, at *1 (Bankr. S.D.N.Y. Mar. 25, 2011) (denying award of interest after state court foreclosure judgment because judgment was equitable in nature; argument that objection to claim was constructive breach of contract was "unfounded"); *Gentry v. Kovler (In re Kovler)*, 253 B.R. 592, 602–03 (Bankr. S.D.N.Y. 2000) (awarding interest to claimant who succeeded on claim for breach of contract and noting that "[p]re-verdict, report or decision interest is mandatory under 5001(a) where a sum has been awarded 'because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property.'"); *In re Ocean Petroleum, Inc.*, 252 B.R. 25, 32 (Bankr. E.D.N.Y. 2000) (awarding judgment in adversary proceeding but denying award of interest because the action was equitable in nature, making award of interest discretionary under section 5001(a)).[10]

---

[10] Arcade argues that *Christian Bros. High School Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284 (S.D.N.Y. 2010), supports the proposition that the award of interest pursuant to NY CPLR § 5001(a) requires entry of a judgment or verdict. Though *In re Bayou Group* was a markedly different factual scenario than the claims resolution issue pending before this Court, the

10

New York state courts interpreting NY CPLR § 5001(a) confirm the requirement that there be a verdict, judgment or decision. *See, e.g.*, *Leary v. New York City Emps'. Ret. Sys.*, 925 N.Y.S.2d 600, 602 (2d Dep't 2011) (denying recovery of interest under section 5001(a) because court "neither awarded the petitioner a specific amount nor directed the payment of interest"); *Ferran Entes. Inc. v. Cauldwell-Wingate Co., Inc.*, No. 600866/97, 2011 WL 1364482, at *5 (N.Y. Sup. Ct. Mar. 31, 2011) ("If the court ultimately finds that plaintiff's recovery, if any, is attributable to breach of contract, then, pursuant to CPLR 5001(a), assessment of pre-decision interest from the date of the breach is mandated."); *Home Insulation & Supply, Inc. v. Buchheit*, 872 N.Y.S.2d 808, 809 (4th Dep't 2009) (granting judgment in favor of plaintiff and awarding discretionary award of pre-verdict interest at the rate of 9% per annum).

At least two bankruptcy courts have considered issues germane to the matter before the Court. In *United States Lines*, 199 B.R. at 476–83, Judge Blackshear was asked to determine whether a claim should be allowed in an amount that included prepetition prejudgment interest after a state court jury verdict for wrongful death and physical pain and suffering. *Id.* at 479. After the debtor filed for bankruptcy the court modified the automatic stay to allow two state court personal injury actions to proceed to final judgment. *Id.* at 478. The state court entered judgment in favor of one of the plaintiffs in the amount of $1,641,500, together with interest from the date of the verdict. *Id.* at 479. The judgment was subsequently modified to provide interest from the date of the plaintiff's death. *Id.* The debtor objected to the award of prepetition prejudgment

---

underlying principle regarding NY CPLR § 5001(a) is instructive. Judge Gardephe characterized NY CPLR § 5001(a) as a "make-whole remedy ordered by the Court once a final judgment for a sum certain is entered, . . . and no such judgment has been entered here." *Id.* at 337. (internal citation omitted). There has been no "final judgment for a sum certain" entered in the State Court Action.

11

interest, arguing that the interest was "unmatured interest" not permitted by section 502(b)(2). *Id.* at 482. The bankruptcy court overruled the objection, concluding that prepetition prejudgment interest was not "unmatured" under the Bankruptcy Code because the "the prepetition, pre-judgment portion would have been due and payable as of the Petition Date." *Id.* at 482–83. But unlike the circumstances here, the trial court had entered a judgment that included interest.

In *In re Lamarre*, 269 B.R. 266 (Bankr. D. Mass. 2001), a state court breach of contract action was filed against a defendant who subsequently filed a chapter 7 bankruptcy petition before a judgment was entered in the state court action. *Id.* at 266–67. The state court plaintiffs then commenced a denial of discharge adversary proceeding to fix and liquidate their claims and obtain a determination that their claims were nondischargeable. *Id.* The bankruptcy court awarded judgment in the claimants' favor including prejudgment interest at the rate of 12% per annum pursuant to Massachusetts General Laws ch. 231 § 6C, which provides: "In all actions based on contractual obligations, upon a verdict, finding, or order for judgment or pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve percent per annum from the date of the breach or demand . . . ." *Id.* at 267. The chapter 7 trustee argued that all prejudgment interest was "unmatured" and therefore should be disallowed. *Id.* Following the reasoning of *United States Lines*, the court concluded that "once the amount of interest that accrued became fixed and liquidated [during the bankruptcy], only that portion that accrued on or before the petition date can be allowed." *Id.* at 268. Prepetition prejudgment interest was

awarded to claimants by the bankruptcy court under applicable Massachusetts state law. *Id.* at 270.

The holdings of *United States Lines* and *Lamarre* do not support Hodel's argument that his claim should be allowed including statutory interest pursuant to NY CPLR § 5001(a). In both cases, the claimants obtained judgments from a state or bankruptcy court that included an award of interest—here, Hodel asserts an entitlement to prepetition prejudgment interest without a verdict, judgment or decision in the State Court Action. Allowance of a claim under section 502 is not the same as a verdict or judgment in a plenary action in state court or bankruptcy court. The procedure for allowance of claims is intended to be summary, not involving the more protracted procedures applicable in a plenary action.

Hodel's argument that he be "deemed to have been awarded $224,571.07" given the equities of the case is likewise unavailing. He argues that Arcade should not be entitled to argue that Hodel has not been awarded a sum of money (Response ¶ 13), pointing to the following facts: (1) the State Court Action was stayed by the bankruptcy and he was not able to proceed, (2) Debtor scheduled the Claim in the amount of $111,453.00 and (3) Debtor then conceded, after a review of the Claim, that it should be valued at $224,571.07. (*Id.*) Though Arcade's concessions in the Objection and the Reply may be judicial admissions[11] or judicially estop[12] Arcade from arguing in other

---

[11] Bankruptcy schedules, executed under penalty of perjury, when offered against a debtor are eligible for treatment as judicial admissions. *See In re Jorczak*, 314 B.R. 474, 482–83 (Bankr. D. Conn. 2004) (citation omitted). The Second Circuit has recognized that "absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *In re Velasquez*, 19 I & N Dec. 377, 382 (B.I.A. 1986) *cited with approval by Ali v. Reno*, 22 F.3d 442, 446 (2d Cir. 1994). "To be considered a judicial admission, however, a statement must be a clear and unambiguous admission of fact." *Delafied 246 Corp. v. City of New York (In re Delafied 246 Corp.)*, No. 05–13634 (ALG), 2007 WL 2332527, at *4 (Bankr. S.D.N.Y. Aug. 14, 2007) (citing *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984)).

13

proceedings that no breach of contract occurred, the Bankruptcy Code does not confer authority on bankruptcy courts to "create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003). In the absence of a judgment or verdict in his favor, Hodel is not entitled to interest as part of his claim against Arcade's bankruptcy estate.

Furthermore, adopting Hodel's arguments would result in prepetition prejudgment interest being added to many allowed unsecured claims arising from a breach of contract (*e.g.*, unpaid contract arrears common to most bankruptcies) in New York, in the absence of any judgment in favor of the claimant, with perhaps the same effect with claims arising in other states having prejudgment interest statutes similar to New York's. Such a result would distort equality of treatment of otherwise similarly situated creditors; equity certainly does not counsel that result.

---

[12] The Second Circuit defines judicial estoppel as the potential consequence of a party asserting two conflicting factual statements. *Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)*, 634 F.3d 678, 695 (2d Cir. 2011). In *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010), the court made clear the underlying principle for judicial estoppel: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (citation omitted). "Typically, judicial estoppel will apply if 1) a party's later position is 'clearly inconsistent' with its former, 2) the court in the earlier proceeding adopted in some way the party's former position, and 3) the party asserting the conflicting statements would gain an unfair advantage against the party seeking estoppel." *Id.* (citation omitted). Moreover, the Second Circuit "further limit[s] 'judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" *In re Adelphia Recovery Trust*, 634 F.3d at 696 (quoting *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005)).

### III.    CONCLUSION

NY CPLR § 5001(a) requires that there be a "sum awarded" by a judgment, verdict or decision for Hodel to be entitled to prepetition prejudgment interest as part of his Claim.  Without a judgment or verdict in hand, Hodel is not entitled to interest. Accordingly, Hodel's Claim is allowed in the amount of $224,571.07, exclusive of the $108,716.19 of interest claimed.

**IT IS SO ORDERED.**

Dated:  August 9, 2011
        New York, New York

                                             **/s/Martin Glenn**
                                             MARTIN GLENN
                                             United States Bankruptcy Judge

15